UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER PHAOUTHOUM,<br><br>Defendant. | Case No. 14-cr-00042-JST-1<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>Re: ECF Nos. 92, 103 |

Before the Court is Defendant Christopher Phaouthoum's motion for compassionate release. ECF Nos. 92, 103.[1] The Court will grant the motion.

On July 25, 2014, Phaouthoum pleaded guilty to conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A)(viii). ECF No. 51. On February 20, 2015, the Court sentenced Phaouthoum to 144 months of imprisonment and five years of supervised release. ECF No. 73. Phaouthoum is 33 years old. ECF No. 104 at 6. He is currently in custody at the Camp at Atwater United States Penitentiary, and the government projects "an anticipated release date of April 4, 2024, assuming credit for good conduct." *Id.* at 5. Based on that release date, the government calculates that Phaouthoum "has served roughly two thirds of his sentence." *Id.* at 22. Phaouthoum contends that he may be released as early as April 2022, after considering earned credits for time spent at UNICOR, a prison labor program, and his eligibility for release to a residential re-entry center. ECF No. 108 at 6.

---

[1] Prior to the Court's appointment of counsel, Phaouthoum filed a motion for compassionate release on his own behalf. ECF No. 92. That motion was superseded by the motion filed by counsel. ECF No. 103.

1    Phaouthoum filed a pro se motion for compassionate release on September 10, 2020. ECF
2 No. 92. The Court appointed counsel two weeks later, and the parties stipulated to a briefing
3 schedule and subsequently agreed to extend that schedule. ECF Nos. 94, 99, 101. Counsel filed a
4 renewed motion on Phaouthoum's behalf on November 19, 2020. ECF No. 103. The motion has
5 now been fully briefed.

6    Phaouthoum brings his motion under "the compassionate release provision of 18 U.S.C.
7 § 3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194
8 (Dec. 21, 2018), which added a provision to allow defendants, not only the Director of the [Bureau
9 of Prisons], to file a motion for reduction of sentence." *United States v. Eberhart*, 448 F. Supp. 3d
10 1086, 1088 (N.D. Cal. 2020). The Court may order the modification of an imposed prison
11 sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are
12 applicable," it finds that "extraordinary and compelling reasons" warrant a modification, so long
13 as the adjusted sentence remains "consistent with applicable policy statements issued by the
14 Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). While "[g]eneral concerns" about the
15 COVID-19 pandemic may be insufficient to establish "extraordinary and compelling reasons" for
16 a sentence modification, *Eberhart*, 448 F. Supp. 3d at 1090, the government acknowledges that
17 "the combination of an inmate's chronic medical condition and the risk of contracting COVID-19
18 in a custodial setting may constitute an extraordinary and compelling reason" to grant a motion for
19 compassionate release, ECF No. 104 at 16.

20    The government agrees that the Court has jurisdiction over Phaouthoum's motion. *Id.* at
21 11-12 (arguing that the Court would have jurisdiction as of December 18, 2020). It argues that the
22 motion should be denied because Phaouthoum's health conditions do not present an extraordinary
23 and compelling reason for release; that he remains a danger to the community; and that the
24 sentencing factors under 18 U.S.C. § 3553(a) weigh against release.

25    The Court has reviewed Phaouthoum's medical records and finds that the government has
26 accurately recounted his recent medical history:

27
> [Phaouthoum has been] recently diagnosed with a disorder involving
> the immune mechanism, unspecified. This assessment was based on
28
> Defendant's immunological laboratory results on October 6, 2020,

2

>which returned a finding of lupus and other conditions. The final report in Defendant's medical records states: "Speckled pattern is associated with mixed connective tissue disease (MCTD), systemic lupus erythematosus (SLE), Sjogren's syndrome, dermatomyositis, and systemic sclerosis/polymyositis overlap."

ECF No. 104 at 6 (citations omitted).[2] As of December 18, 2020, Phaouthoum was still awaiting results of additional tests and information concerning appropriate treatment. ECF No. 108 at 9.

The government acknowledges that Phaouthoum's recent diagnosis "might increase his risk of severe illness from COVID-19, if he contracts it." ECF No. 104 at 19. This accords with the CDC's guidance that "[h]aving a weakened immune system," including from having "immune deficiencies" "might increase . . . risk of severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#immunocompromised-state (last visited Dec. 30, 2020).

Nonetheless, the government argues that Phaouthoum's release is not warranted because his immune disorder is "chronic and manageable," and that he is at a facility that has no active cases. ECF No. 104 at 19-20. These arguments are not persuasive. In *United States v. Millage*, for example, the court acknowledged that lupus is "generally controllable with medication and proper diet," and it also noted that the facility at which the defendant was housed had no confirmed COVID-19 cases. 464 F. Supp. 3d 1218, 1223, *appeal dismissed*, 810 F. App'x 572 (9th Cir. 2020). Nonetheless, the court was "satisfied that Mr. Millage [who had been diagnosed with lupus and hypertension] has sufficiently shown extraordinary and compelling reasons for compassionate release," in part because "[t]he CDC and other medical authorities have stated that COVID-19 is especially dangerous for older people and for people with severe chronic medical conditions, including compromised immune systems." *Id.* at 1222, 1224. The government attempts to distinguish *Millage* by arguing that Millage had "already served more than 90 percent of his 108-month prison sentence" at the time the motion was granted. *Id.* at 1224. However, the

---

[2] The government submitted Phaouthoum's medical records along with a request that they be filed under seal. ECF No. 105. The Court denied without prejudice the government's motion to seal, ECF No. 106, and the parties subsequently agreed that these records may be filed on the public docket, ECF No. 107. The government shall file Phaouthoum's records on the docket within seven days of the date of this order.

court in *Millage* considered the length of time remaining on Millage's sentence when determining whether he posed "a danger to the safety of any other person or to the community," not when considering the seriousness of his health conditions.  *See id.* at 1223-24.  The Court considers the public safety factor below, in connection with consideration of the Section 3553(a) factors.

Moreover, to the extent courts consider the spread of COVID-19 at the facility at which the defendant is detained, the circumstances at Atwater have changed since the government filed its opposition.  It is no longer true that Atwater has no confirmed COVID-19 cases.  To the contrary, it now has 203 confirmed active cases among the incarcerated population and 12 active staff cases, and these numbers have been increasing over the last week.  Federal Bureau of Prisons, "COVID-19 Coronavirus," https://www.bop.gov/coronavirus/ (last visited Dec. 31, 2020).  The government urges this Court to follow *United States v. Hart*, No. 1:17-cr-00016-DAK, 2020 WL 6582672 (D. Utah Nov. 10, 2020), in which the court denied compassionate release to a defendant with lupus.  But that case is distinguishable, both because the facility at which Hart was housed had only eight active cases at the time, and because, even based on the government's more conservative calculations in this case, Hart had only served about half the proportion of his sentence as Phaouthoum.  *Id.* at *1-2 (noting that the defendant had served "35.3% of his statutory term" and that FCI Florence had "only eight active Covid-19 cases (two inmates and six staff)"); *see also id.* at *2 (making clear that the court was not concluding "that lupus may never warrant a reduction in sentence").  Given the current outbreak at Atwater and Phaouthoum's compromised immune system, the Court has no difficulty concluding that extraordinary and compelling reasons warrant his release.

The Court next considers the Section 3553(a) factors, including whether Phaouthoum's continued incarceration is necessary "to protect the public from further crimes of the defendant."[3]

---

[3] Some courts, including this one, have considered public safety under Section 1B1.13(1)(B)(2) of the Sentencing Guidelines Manual, which provides that release should be granted only if the court determines that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  Compassionate release may be granted only if "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)  In April, one court in this district explained that "[c]ourts are split on whether section 1B1.13 continues to control, as it has not been updated since the passage of the First Step Act.  However, even courts which have found the provision to be outdated have held it continues

4

18 U.S.C. § 3553(a)(2)(C).  The Court acknowledges Phaouthoum's two prior misdemeanor convictions, as well as the fact that the crime in this case involved over 5000 grams of methamphetamine.  However, the Court weighs that against Phaouthoum's performance while in custody.  He has "successfully completed the requirements for the Non-Residential Drug Abuse Program," and he has received outstanding evaluations from his supervisors at UNICOR.  ECF No. 103-1 at 11-12, 18.  One supervisor noted in late 2019 that "Phaouthoum has been an employee of UNICOR since December 2016.  He has excelled in all areas of work that he has been assigned to[]." *Id.* at 11.  Another wrote that he "is very responsible and takes his job seriously.  He is punctual and excels in his job performance and is rated well above average.  Also, he adheres to all standards and safety requirements of the factory." *Id.* at 12.  In addition, Phaouthoum has successfully completed several education courses and seeks to enroll in additional courses once the COVID-19 lockdown is lifted.  ECF No. 103-1 at 14-15.

Phaouthoum has had only one disciplinary violation in his seven years in custody.  ECF No. 104-1 at 5-11.  Although relatively recent, it was for unauthorized use of a service that sends emails as text messages.  *Id.*  Phaouthoum contends that he received advertisements for the service and did not know that it was unauthorized, *id.* at 5, and the report indicates that the two phone numbers to which messages were sent are on Phaouthoum's list of approved contacts, *id.* at 7.  Phaouthoum has appealed the discipline, in part because he contends that he used the service for four years without incident and believes he might have been targeted because he requested compassionate release.  ECF No. 108 at 9-10.  The Court does not find that this single incident indicates either that Phaouthoum would pose a danger to his community if released, or that he is unable to respect rules more generally, particularly in light of his positive employment record.

The Court also finds persuasive the Probation Office's recent report, which concluded that

---

to provide 'helpful guidance.'" *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.2 (N.D. Cal. 2020) (citations omitted).  More recently, following decisions by the Second, Sixth, and Seventh Circuits, another court in this district has concluded that "§ 1B1.13 does not apply to motions for compassionate release brought by defendants." *United States v. Blanco*, No. 93-cr-20042-2 CW, 2020 WL 7350414, at *5 (N.D. Cal. Dec. 14, 2020).  The Court does not decide whether Section 1B1.13 applies to Phaouthoum's motion because it nonetheless considers public safety under the Section 3553(a) factors.

"there are no additional conditions recommended, should the Court approve the motion for Compassionate Release," and that, upon "reviewing Mr. Phaouthoum's risks and needs, it does not appear a special term of supervision is warranted," nor would a Location Monitoring condition be necessary. ECF No. 97 at 1. Even by the government's calculations, Phaouthoum has served approximately two-thirds of his sentence in custody, and he would likely be eligible for an even earlier release given his work at UNICOR and his eligibility for housing at a residential re-entry center. After considering all of the relevant factors, the Court concludes that Phaouthoum would not pose a danger to the community if released, and that a sentence reduction to time served would satisfy the Section 3553(a) factors.

For the above reasons, the Court grants Phaouthoum's motion for compassionate release. The sentence is reduced to time served. Phaouthoum shall complete the five-year term of supervised release imposed in the original sentence subject to the conditions imposed by the Court at sentencing on February 20, 2015.

The Probation Office has verified Phaouthoum's release plan and has concluded that his family's home "appeared to be suitable for supervision." ECF No. 97 at 1. However, the release address is in the Eastern District of California, so he must be approved for supervision in that district. *Id.* at 1-2. This order is stayed for up to fourteen days to make appropriate arrangements with the Eastern District of California, to make appropriate travel arrangements, and to ensure Phaouthoum's safe release. Phaouthoum shall be released as soon as appropriate arrangements are made and it is safe for Phaouthoum to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Phaouthoum's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

Dated: December 31, 2020



_____
JON S. TIGAR
United States District Judge